UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| STACEY W.,[1] | ) |
| | ) |
|     *Plaintiff*, | ) |
| | ) |
|     *v.* | )    No. 1:20-cv-01949-SEB-MG |
| | ) |
| KILOLO KIJAKAZI,[2] Acting Commissioner of the Social Security Administration, | ) |
| | ) |
|     *Defendant.* | ) |

## REPORT AND RECOMMENDATION

In March 2017, Plaintiff Stacey W. applied for disability insurance benefits ("DIB") and protectively filed for supplemental social income benefits ("SSI") from the Social Security Administration ("SSA"), alleging a disability onset date of December 1, 2016. [Filing No. 11-2 at 16.] Her applications were initially denied on June 1, 2017, [Filing No. 11-3 at 2-19; Filing No. 11-4 at 2-9], and upon reconsideration on September 27, 2017, [Filing No. 11-3 at 22-39; Filing No. 11-4 at 11-16]. Administrative Law Judge Shelette Veal (the "ALJ") conducted a hearing on June 13, 2019. [Filing No. 11-2 at 33-56.] The ALJ issued a decision on July 2, 2019, concluding that Stacey W. was not entitled to receive benefits. [Filing No. 11-2 at 16-32.] The Appeals Council denied review on May 28, 2020. [Filing No. 11-2 at 2-4.] On July 24, 2020, Stacey W.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and Case Management Committee of the Administrative Office of the United States courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

[2] Pursuant to Fed. R. Civ. P. 25(d), after the removal of Andrew M. Saul from his office as Commissioner of the SSA on July 9, 2021, Kilolo Kijakazi automatically became the Defendant in this case when she was named Acting Commissioner.

timely filed this civil action asking the Court to review the denial of benefits according to 42 U.S.C. § 405(g). [Filing No. 1.]

The Court referred this matter to the undersigned Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b). [Filing No. 13.] For the following reasons, the undersigned recommends that the Court reverse the decision of the Commissioner and remand for further proceedings consistent with this Report.

## I.
## STANDARD OF REVIEW[3]

"The [SSA] provides benefits to individuals who cannot obtain work because of a physical or mental disability." *Biestek v. Berryhill*, __U.S.__, 139 S. Ct. 1148, 1151 (2019). Disability is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." *Stephens v. Berryhill*, 888 F.3d 323, 327 (7th Cir. 2018) (citing 42 U.S.C. § 423(d)(1)(A)).

When an applicant appeals an adverse benefits decision, the Court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Id.* For purposes of judicial review, "substantial evidence" is such relevant "evidence that 'a reasonable mind might accept as adequate to support a conclusion.'" *Zoch v. Saul*, 981 F.3d 597, 601 (7th Cir. 2020) (quoting *Biestek*, 139 S. Ct. at 1154). "Although this Court reviews the record as a whole, it cannot substitute its own judgment for that of the SSA by reevaluating the facts, or reweighing the evidence to decide whether a claimant is in fact disabled." *Stephens*, 888 F.3d at 327. Reviewing courts also "do not decide questions of credibility, deferring

---

[3] The regulations governing disability determinations for DIB under Title II and SSI under Title XVI are identical in virtually all relevant respects.

2

instead to the ALJ's conclusions unless 'patently wrong.'" *Zoch*, 981 F.3d at 601 (quoting *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017)). The Court does "determine whether the ALJ built an 'accurate and logical bridge' between the evidence and the conclusion." *Peeters v. Saul*, 975 F.3d 639, 641 (7th Cir. 2020) (quoting *Beardsley v. Colvin*, 758 F.3d 834, 837 (7th Cir. 2014)).

The SSA applies a five-step evaluation to determine whether the claimant is disabled. *Stephens*, 888 F.3d at 327 (citing 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4)). The ALJ must evaluate the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform her past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000), *as amended* (Dec. 13, 2000) (citations omitted). "If a claimant satisfies steps one, two, and three, she will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then she must satisfy step four. Once step four is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After step three, but before step four, the ALJ must determine a claimant's residual functional capacity ("RFC") by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the ALJ "may not dismiss a line of evidence contrary to the ruling." *Id*. The ALJ uses the RFC at step four to determine whether the claimant can perform her own past relevant work and if not, at step five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (v). The burden of proof is on the claimant for steps one through four; only at step five does the burden shift to the Commissioner. *See Clifford*, 227 F.3d at 868.

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court must affirm the denial of benefits. *Stephens*, 888 F.3d at 327. When an ALJ's decision does not apply the correct legal standard, a remand for further proceedings is usually the appropriate remedy. *Karr v. Saul*, 989 F.3d 508, 513 (7th Cir. 2021). Typically, a remand is also appropriate when the decision is not supported by substantial evidence. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). "An award of benefits is appropriate only where all factual issues have been resolved and the 'record can yield but one supportable conclusion.'" *Id.* (quoting *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

## II.
### BACKGROUND

Stacey W. was 44 years old on the date of her alleged onset of disability. [Filing No. 11-2 at 27.] She has a seventh-grade education, [Filing No. 11-2 at 27], and previously worked as a laundry laborer for more than fifteen years prior to her alleged onset date. [Filing No. 11-6 at 7.] Stacey W.'s application alleges that she can no longer work because of right foot swelling, neuropathy, Achilles deterioration, and depression. [Filing No. 11-6 at 6; Filing No. 11-6 at 37.][4]

The ALJ followed the five-step sequential evaluation set forth in 20 C.F.R. § 404.1520(a)(4) and concluded that Stacey W. was not disabled. [Filing No. 11-2 at 28.] Specifically, the ALJ found as follows:

- At Step One, Stacey W. had not engaged in substantial gainful activity[5] during the period at issue. [Filing No. 11-2 at 19.]

---

[4] The relevant evidence of record is amply set forth in the parties' briefs and need not be repeated here. Specific facts relevant to the Court's disposition of this case are discussed below.

[5] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a).

4

- At Step Two, Stacey W. "has the following severe impairments: Osteoarthrosis; Chronic Ankle Pain, with Mild Osteoarthritis of the Talonavicular Joint; Headache; Complex Regional Pain Syndrome; and Obesity." [Filing No. 11-2 at 19 (citation omitted).]

- At Step Three, Stacey W. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. [Filing No. 11-2 at 22.]

- After Step Three but before Step Four, Stacey W. had the RFC "to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except with the following limitations. The claimant can stand and/or walk for 2-hours and sit for 6-hours in per [sic] 8-hour workday. The claimant can occasionally climb ramps or stairs, never climb ladders, ropes or scaffolds, and occasionally balance on level surfaces, stoop, kneel, crouch, and crawl." [Filing No. 11-2 at 22.]

- At Step Four, relying on the testimony of the vocational expert ("VE") and considering Stacey W.'s RFC, she was unable to perform her past work as a laundry laborer. [Filing No. 11-2 at 26-27.]

- At Step Five, relying on the VE's testimony and considering Stacey W.'s age, education, work experience, and RFC, there were jobs that existed in significant numbers in the national economy that she could perform, such as weight checker, final assembler, and order clerk. [Filing No. 11-2 at 27-28.]

## III.
### DISCUSSION

Stacey W. argues that the ALJ erred: (1) by improperly discrediting her testimony about her symptoms under SSR[6] 16-3p by failing to account for the unique presentation of pain caused by Complex Regional Pain Syndrome ("CRPS") as documented in SSR 03-2p; (2) by failing to discuss leg elevation as part of the RFC finding; and (3) by failing to determine whether her severe impairment of headaches met or equaled Listing 11.02 and to account for limitations caused by her headaches in the RFC. The Court will consider the arguments in turn.

---

[6] Social Security Rulings ("SSR") are interpretive rules intended to offer guidance to ALJs and are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); *Laurer v. Apfel*, 169 F.3d 489, 492 (7th Cir. 1999).

A.     **The ALJ's Analysis of Stacey W.'s Subjective Symptoms**

Stacey W. argues that the ALJ erred in evaluating her subjective symptoms when the ALJ concluded that Stacey W.'s "pre-hearing allegations and hearing testimony of limitations are just not consistent with diagnostic testing of her ankle/foot/leg conditions." [Filing No. 11-2 at 26.] Stacey W. first asserts that the ALJ ignored SSR 03-2p concerning CRPS, noting that the ALJ did not cite SSR 03-2p in the decision denying benefits. Stacey W. contends that the ALJ improperly discredited Stacey W's statements about the intensity, persistence, and limiting effects of her symptoms because the ALJ failed to account for the nature of CRPS and how it manifests itself. [Filing No. 14 at 16.] For example, the ALJ found Stacey W.'s statements about her pain and limitations to be inconsistent with Stacey W.'s 20-year work history, but Stacey W. notes that as described in SSR 03-2p, CRPS "may remain stable over time, improve, or worsen." [Filing No. 14 at 17 (quoting SSR 03-2p).] Second, Stacey W. contends that the ALJ's subjective symptoms finding was also contrary to SSR 16-3p, which addresses how to evaluate an individual's stated symptoms. Stacey W. says the purported inconsistencies cited by the ALJ—such as Stacey W. telling a doctor in September 2016 that her right ankle hurt because she "stepped wrong," and then telling another medical provider in February 2017 that her left ankle hurt from shifting weight off her painful right ankle, and that "despite her alleged inability to afford [the drug] Amitriptyline for her ankle pain, she is noted to have bought Norco and Flexeril for her neck pain, and has purchased other medications, such as Cymbalta, [Filing No. 11-2 at 24]—are not inconsistencies and result from the ALJ making assumptions not supported by the record. [Filing No. 14 at 20-21.]

The Commissioner responds that the ALJ "considered several appropriate regulatory factors in explaining her symptom evaluation findings, including [Stacey W.]'s own description of her symptoms and the impact they had on her daily activities; her inconsistent statements about

6

the causes of her ankle pain; the objective medical evidence from Dr. French's examination showing normal muscle strength, normal neurological findings, and unlimited sitting abilities, but a need for limits on prolonged standing and walking; normal CT scans of her head despite complaints of headaches; and her improved condition when using prescribed medication." [Filing No. 16 at 13.] The Commissioner also notes that the ALJ compared Stacey W.'s symptom allegations to her reports regarding her daily activities in which Stacey W. says she performs a variety of household activities. [Filing No. 16 at 14.] The Commissioner argues that "[Stacey W.] is mistaken that the ALJ had to cite SSR 03-2p, related to [CRPS], in order for the court to defer to the ALJ's symptom evaluation finding." [Filing No. 16 at 16.] And further, the ALJ was "only required to give reasons for the weight given to a claimant's statements sufficient to provide a fair sense of how the ALJ assessed the claimant's testimony." [Filing No. 16 at 16.]

In reply, Stacey W. argues that the Commissioner is attempting to offer post hoc explanations that are absent from the ALJ's written decision. [Filing No. 17 at 1.]

An ALJ's subjective symptom analysis is given special deference so long as the ALJ explains his or her reasoning and it is supported by the record. *Summers*, 864 F.3d at 528. A reviewing court will only overturn an ALJ's subjective symptom analysis if it is "patently wrong." *Id.*

SSR16-3p addresses the method by which ALJs should "evaluate statements regarding the intensity, persistence, and limiting effects of symptoms in disability claims." SSR 16-3p, *available at* 2016 WL 1119029. SSR 16-3p eliminates "the use of the term 'credibility'" from the evaluation process, and the SSA clarified that "subjective symptom evaluation is not an examination of an individual's character. Instead, we will more closely follow our regulatory language regarding

symptom evaluation." *Id.* at *1. SSR 16-3p instructs ALJs to use the following method to evaluate statements regarding the intensity, persistence, and limiting effects of symptoms:

> Consistent with our regulations, we instruct our adjudicators to consider all of the evidence in an individual's record when they evaluate the intensity and persistence of symptoms after they find that the individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms. We evaluate the intensity and persistence of an individual's symptoms so we can determine how symptoms limit ability to perform work-related activities for an adult.

*Id.* at *2. Thus, ALJs use a two-step evaluation of an individual's subjective symptoms. First, an ALJ "must determine whether a claimant has a medically determinable impairment that could reasonably be expected to produce an individual's symptoms." *Srp v. Colvin*, 2016 WL 7507781, at *2 (C.D. Ill. July 14, 2016). If the claimant is found to have such a medically determinable impairment at step one, the ALJ moves the second step in which the ALJ "must consider all of the evidence in the record to determine the intensity, persistence, and limiting effects of the claimant's symptoms." *Id.* To conduct this analysis at the second step, SSR 16-3p instructs as follows:

> In considering the intensity, persistence, and limiting effects of an individual's symptoms, we examine the entire case record, including the objective medical evidence; and individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record.

SSR 16-3p, 2016 WL 1119029, at *4.

The Seventh Circuit has cautioned that an ALJ "cannot disbelieve [a claimant's] testimony solely because it seems in excess of the 'objective' medical testimony." *Johnson v. Barnhart*, 449 F.3d 804, 806 (7th Cir. 2006). That is so because "[t]he etiology of pain is not so well understood, or people's pain thresholds so uniform, that the severity of pain experienced by a given individual can be 'read off' from a medical report." *Id.*

8

SSR 03-2p provides further guidance by explaining the Commissioner's policies for evaluating CRPS symptoms. SSR 03-2p, *available at* 2003 WL 22399117. CRPS "describe[s] a constellation of symptoms and signs that may occur following an injury to bone or soft tissue. The precipitating injury may be so minor that the individual does not even recall sustaining an injury." *Id.* at *1. Relevant here, SSR 03-2p instructs that CRPS often produces a degree of pain that is "out of proportion to the severity of the precipitating injury." *Id.* at *2. "In other words, a claimant who experiences this condition will often not have the sort of objective clinical findings that would normally be expected to produce the amount of pain the individual is reporting." *Mark L. v. Saul*, 2019 WL 2560099, at *3 (N.D. Ind. June 21, 2019).

In addition, "the symptoms associated with this condition are often transitory—they 'may be present at one examination and not appear at another.'" *Id.* (quoting SSR 03-2p). Indeed, SSR 03-2p notes that "conflicting evidence in the medical record is not unusual in cases of [CRPS] due to the transitory nature of its objective findings and the complicated diagnostic process involved." Therefore, "while ALJs often point to evidence of inconsistencies in the record as an indication a condition is not as severe as a claimant says, that same reasoning might not apply when a claimant has [CRPS], as to which such contradictions are common." *Mark L.*, 2019 WL 2560099, at *3. "Because … [CRPS] often produce[s] pain and other symptoms out of proportion to the 'objective' medical evidence, it is crucial that the disability adjudicator evaluate credibility with great care and a proper understanding of the disease[]." *Johnson v. Colvin*, 2014 WL 2765701, at *1 (E.D. Wis. June 18, 2014).

The ALJ concluded that Stacey W.'s impairments, including her CRPS, could reasonably be expected to cause her alleged symptoms. [Filing No. 11-2 at 23.] However, the ALJ concluded that her symptoms and limitations were not as severe as she claimed. [Filing No. 11-2 at 23.] The

9

ALJ's decision did not cite to SSR 03-2p. *See, e.g.*, *Beebe v. Saul*, 2019 WL 5616952 (W.D. Wis. Oct. 31, 2019) (noting that the ALJ "failed to cite or consider SSR 03-2p," and while this failure alone may not qualify as reversible error, SSR 03-2p "does address several of the concerns that the [ALJ] raised in her decision concerning inconsistencies in plaintiff's reports and the medical record"). Nor did the decision otherwise acknowledge the ruling or reflect an awareness of the characteristics of CRPS discussed in SSR 03-2p.

The ALJ discounted Stacey W.'s alleged symptoms and limitations in part for reasons that appear inconsistent with the issues discussed in SSR 03-2p. For example, the ALJ discounted Stacey W.'s stated symptoms because "[Stacey W.] alleges a 20-plus year history of this condition, the undersigned also took note of the good work history over this period, and how the corresponding alleged limitations do not make sense." [Filing No. 11-2 at 24.] The ALJ also noted that in June 2016 testing was "negative for her musculoskeletal system, other than ankle joint swelling, redness, and pain," however, "[Stacey W.] complained of pain that is so severe that she is falling because her right ankle 'gives out.'" [Filing No. 11-2 at 24.] The ALJ also cites a February 2017 physical exam that "found only mild tenderness to palpation of the right posterior heel, and mild swelling to her right lateral foot," despite Stacey W.'s allegations of pain. [Filing No. 11-2 at 25.] As discussed in SSR 03-2p, these perceived inconsistencies might not be contrary to Stacey W.'s testimony regarding her pain. The ALJ did not evaluate Stacey W.'s statements through the prism of SSR 03-2p, and this omission resulted in a symptom analysis that was patently wrong. Because the ALJ found Stacey W.'s CRPS to be a severe impairment, the ALJ's failure to consider the limitations and presentation of CRPS is not harmless error.

Additionally, other "inconsistencies" cited by the ALJ are problematic. The ALJ says that although Stacey W. alleges that she injured her right ankle slipping in water and that she has

rheumatoid arthritis, "she has reported different causes to her medical providers" including a September 2016 emergency room visit for right ankle pain after she reported "stepping wrong" the day prior and a February 2017 emergency room visit in which she reported that her left ankle hurt from shifting weight onto it to avoid putting additional weight on her painful right ankle. [Filing No. 11-2 at 24.] But these reports are not inconsistent. Stacey W. can have ongoing right ankle issues and simultaneously suffer more acute injuries to the ankle. And a report of pain in the left ankle is not inconsistent with also having pain in the right ankle.

  The ALJ also found that Stacey W. "has a history of telling inconsistent stories to her providers regarding her teeth. For example, she told Community Howard Regional Health that it would cost $280 to have some teeth removed …, and then told St. Vincent Hospital providers that it would cost about $3,000 to remove the teeth." [Filing No. 11-2 at 24.] However, the record regarding Stacey W.'s Community Howard visit on January 1, 2016 reflects that Stacey W. "[s]tates [that she] went to dentist and was told both teeth need pulled but require $280." [Filing No. 11-7 at 37.] More than a year later—on January 10, 2017—Stacey W. visited St. Vincent Hospital for tooth pain and the record from that visit says that Stacey W. "presents to the ER with dental pain. States it has been going on for about 2 years. … Has 3 teeth that need to be pulled. Went to Aspen dental and was told it would be about 3,000 dollars." [Filing No. 11-7 at 131.] The ALJ did not question Stacey W. about her teeth during the hearing. The statements are not necessarily inconsistent. First, a dentist "requiring" $280 to pull teeth versus costing $3,000 could be the difference between a required upfront payment versus the total cost of the procedure. And, setting that potential distinction aside, the two records are separated by more than a year, and the January 2016 record references two teeth ("both") while the January 2017 record references three teeth. It is possible that the cost of the procedure became more complex and would involve more

11

teeth if the conditions worsened during the intervening year. The evidence cited by the ALJ does not support a finding of inconsistency on its face.

The ALJ also discredited Stacey W.'s symptoms because "despite her alleged inability to afford Amitriptyline for her ankle pain, she is noted to have bought Norco and Flexeril for her neck pain…, and has purchased other medications, such as Cymbalta." [Filing No. 11-2 at 24.] But the ALJ did not question Stacey W. about how she paid for certain medications and her ability to afford other medications. *See Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) ("[A]n ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference."). Thus, this perceived inconsistency cited by the ALJ is also not supported by the record.

For these reasons, the undersigned recommends reversing the decision of the ALJ and remanding this case for further consideration of Plaintiffs' right extremity impairment. On remand, the ALJ should review SSR 03-2p and consider its relevance to plaintiff's symptoms and limitations. With SSR 03-2p as guidance, the ALJ should further reevaluate Stacey W.'s subjective symptom allegations in accordance with SSR 16-3p.

**B.     Leg Elevation**

Stacey W. contends that the ALJ's RFC finding failed to account for her need to elevate her legs throughout the day. She notes that the RFC did not account for Nurse Kuhn's assessment that when Stacey W. sits for a prolonged period, she should elevate her leg to hip level 12% of the time during an eight-hour workday. [Filing No. 14 at 24.] She argues that it was error for the ALJ not to provide for an allowance for elevating her legs in the RFC, and further, that the ALJ never addressed the need to elevate her legs. [Filing No. 14 at 4; Filing No. 14 at 24.] Stacey W. accuses

12

the ALJ of "playing doctor" by "independently determining that leg elevation is not medically necessary." [Filing No. 14 at 25.]

In response, the Commissioner argues that in reaching the RFC finding, the ALJ properly gave great weight the medical opinion of examining physician Dr. French, who found that Stacey W. had abilities consistent with sedentary work. [Filing No. 16 at 6.] The Commissioner further argues that the ALJ adopted RFC restrictions based on the ALJ's consideration of Stacey W.'s impairments, "as well as statements about her symptoms and the limits they caused." [Filing No. 16 at 8.] The Commissioner contends that the ALJ "reasonably rejected the opinion of Nurse Kuhn, who limited [Stacey W.] to an extreme degree, but based her limits primarily on [Stacey W.'s] subjective allegations rather than objective corroboration," [Filing No. 16 at 8], and that Stacey W. "does not cite any treating or examining physicians who corroborated a need for leg elevation due to symptoms of pain or swelling," [Filing No. 16 at 9].

In reply, Stacey W. argues that the Commissioner is assuming that Nurse Kuhn based her limits on Stacey W's subjective allegations, "but there is no proof of this and it is purely speculative." [Filing No. 17 at 2.]

An ALJ must explain his or her reasoning to build the "logical bridge" connecting the evidence to the ALJ's decision. *See Smith v. Astrue*, 467 F. App'x 507, 510 (7th Cir. 2012). Here, the ALJ did not explain why she concluded that Stacey W. does not need to elevate her legs. Stacey W. testified that she elevates her leg throughout the day, [*see* Filing No. 11-2 at 50], and Nurse Kuhn opined that Stacey W. needs to elevate her legs at hip-level for about an hour total during an eight-hour workday, [Filing No. 11-7 at 333]. The ALJ discussed why she gave little weight to Nurse Kuhn's opinion about Stacey W.'s RFC generally but did not specifically address leg elevation. [Filing No. 11-2 at 26.] The ALJ did not discuss Stacey W.'s testimony about leg

13

elevation either. The ALJ erred in omitting such a discussion. *See Smith*, 467 F. App'x at 510 (remanding because of "the perfunctory nature of the ALJ's discussion of leg elevation"); *Deseray B. v. Saul*, 2019 WL 2635893, at *7 (S.D. Ind. June 26, 2019) (remanding where "[n]o explanation is provided as to why or the extent to which the Plaintiff's testimony about leg elevation is not credible, an undertaking which is required in this Circuit"). This was a critical decision because the VE testified that Stacey W.'s need to elevate her leg to waist height would preclude the sedentary jobs identified. [Filing No. 11-2 at 55.]

For these reasons, the undersigned recommends reversing the decision of the ALJ and remanding this case for further consideration of Stacey W.'s leg elevation in connection with her RFC. On remand, the ALJ should evaluate the medical evidence and assess the credibility of Stacey W.'s testimony regarding leg elevation, and if the ALJ finds that Stacey W.'s leg elevation limitation is not supported by the record, the ALJ should explain how she arrived at that conclusion.

**C.      Headaches**

Finally, Stacey W. contends the ALJ erred by finding that Stacey W.'s headaches constituted a severe impairment but not analyzing whether it met the criteria for Listing 11.02 (epilepsy) or including any associated limitations in the RFC. [Filing No. 14 at 4; Filing No. 14 at 27.] Stacey W. says that "[d]espite finding that headaches are a severe impairment, there is no indication that Listing 11.02 was ever considered." [Filing No. 14 at 27.] She cites evidence in the record of Stacey W. seeking treatment for headaches and faults the ALJ for not discussing "how and why these migraines would not prevent [Stacey W.] from being able to maintain employment." [Filing No. 14 at 28.] Stacey W. contends that a finding of a severe impairment

14

"cannot square with a conclusion that it imposes no limitations." [Filing No. 14 at 29] (quoting *Pickens v. Berryhill*, 2019 WL 1219707, at *2 (E.D. Ark. Mar. 15, 2019)).]

In response, the Commissioner argues that Stacey W. has made no effort to show that the nature and severity of her headaches equated with Listing 11.02. [Filing No. 16 at 11.] The Commissioner also notes that the ALJ considered Stacey W.'s normal objective testing findings, such as a normal CT scan of her head and statements in January 2018 that her headaches had been successfully treated with the medicine Lisinopril. [Filing No. 16 at 11.] In addition, the Commissioner says the ALJ did not err by not including additional limitation in the RFC to account for Stacey W.'s headaches because she has not identified any objective medical corroboration for any RFC limits caused by headaches. [Filing No. 16 at 10-12.]

In reply, Stacey W. contends that because Stacey W. has been unemployed since 2016, it is not surprising that her medical records do not contain work restrictions attributed to her headaches. [Filing No. 17 at 2-3.]

Claimants have the burden of proving disability, and an ALJ "will consider only impairment(s) [claimants] say [they] have or about which [the ALJ] receive[s] evidence." 20 C.F.R. § 404.1512(a). A claimant seeking to establish medical equivalence to a Listing must "present medical finding equal in severity to *all* the criteria for the one most similar listed impairment." *Sims v. Barnhart*, 309 F.3d 424, 428 (7th Cir. 2002) (internal citation and quotation marks omitted) (emphasis in original).

"There is no specific listing for migraines or headaches, but the Commissioner routinely considers this impairment under the criteria for the Listing for epilepsy, which is 11.02." *Lister v. Saul*, 2021 WL 3088706, at *3 (N.D. Ind. July 22, 2021) (citations and alterations omitted).

The ALJ was not required to specifically consider Listing 11.02 because Stacey W. did not develop any evidence that she met the criteria for Listing 11.02.  *See Brandi M. v. Saul*, 2021 WL 99576, at *6 (S.D. Ind. Jan. 12, 2021) ("Plaintiff's argument that the ALJ needed to *sua sponte* consider Listing 11.02 under these circumstances fails because (1) medical experts did not find that a listing applied, (2) Plaintiff has not articulated how the medical evidence meets the listing, and (3) Plaintiff has not shown that existing precedents require the ALJ to raise in its written decision a listing that Plaintiff did not argue at the hearing level.").

However, the ALJ *does* need to build a logical bridge between the finding that Stacey W. suffered from the severe impairment of headaches and the ALJ's RFC finding.  "An ALJ errs where she finds that a claimant suffers a medically determinable severe impairment but fails to find that the impairment produces any work-related functional restrictions."  *Gregory B. v. Saul*, 2020 WL 995828, at *8 (N.D. Ind. Mar. 2, 2020).  The ALJ's decision stated in a heading that Stacey W.'s headaches constituted a severe impairment but never explained why.  The ALJ did not fill in that gap in the RFC discussion either. That discussion only mentioned Stacey W.'s complaints of headaches and corresponding treatment in passing, without any reference to how the ALJ assessed that evidence or what limitations she found Stacey W. had as a result.  The Court is left to guess why the ALJ deemed headaches to be a severe impairment, what limitations the ALJ believed that impairment caused, and how the RFC accounts for them.  *See Gregory B.*, 2020 WL 995828, at *8; *Allen v. Colvin*, 2014 WL 2930341, at *4 (S.D. Ind. June 26, 2014) ("[T]he ALJ erred by not addressing [claimant]'s severe impairments of headaches and IBS when determining the RFC.").

The Court agrees with the Commissioner that Stacey W. offers only speculation about how her headaches would limit her ability to work.  But it is the ALJ who found that this condition poses a severe impairment, meaning that it substantially limited Stacey W.'s ability to perform

16

basic work functions, and "[t]he problem is that the ALJ never explained how." *See Benefield v. Saul*, 2020 WL 634422, at *3 (N.D. Ind. Feb. 11, 2020) (remanding where ALJ found claimant had severe impairment of headaches but never explained how the impairment impacted claimant's ability to perform work).

For these reasons, the undersigned recommends reversing the decision of the ALJ and remanding this case for further consideration of Stacey W.'s severe impairment of headaches in connection with her RFC. On remand, the ALJ should evaluate the medical evidence and assess the credibility of Stacey W.'s testimony regarding headaches, and if the ALJ finds that Stacey W.'s severe impairment of headaches is supported by the record, the ALJ should explain how this severe impairment impacted Stacey W.'s ability to perform work.

## IV.
### CONCLUSION

For the reasons detailed above, the undersigned recommends the Court **REVERSE** the ALJ's decision denying Stacey W. benefits and **REMAND** this matter for further proceedings pursuant to 42 U.S.C. § 405(g) (sentence 4) as detailed above.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b). Failure to file timely objections within fourteen (14) days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

Date: 8/13/2021

Mario Garcia
United States Magistrate Judge
Southern District of Indiana

**Distribution via ECF to all counsel of record.**

17